**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephen Douglas Reeves, | No. CV-21-1183-PHX-DWL |
| Petitioner, | <u>DEATH PENALTY CASE</u> |
| v. | **ORDER** |
| David Shinn, et al., | |
| Respondents. | |

Petitioner Stephen Reeves is an Arizona death row inmate seeking habeas relief. Respondents are the director of the Arizona Department of Corrections and wardens at the Arizona State Prison Complex. Now pending before the Court are (1) Respondents' motion to preclude Reeves's legal team from contacting Reeves's trial jurors without a showing of good cause (Doc. 12); and (2) Respondents' motion to preclude Reeves's legal team from directly contacting victims (Doc. 13). Reeves filed a response opposing the motions (Doc. 14), as well as a notice of supplemental authority (Doc. 16), and Respondents filed a reply (Doc. 15). As discussed below, both motions are granted.

I.     <u>Background</u>

Reeves was convicted and sentenced to death for the murder of Norma Contreras. The Arizona Supreme Court, in its opinion upholding the conviction and sentence, described the facts surrounding the crimes as follows:

> One Saturday morning in June 2007, Reeves entered an office where eighteen-year-old Contreras was working alone. Reeves asked if the office was hiring; she said no, and he left. About five minutes later, Reeves

>returned carrying a piece of concrete and demanded her car keys and cell phone. Contreras attempted to push an alarm button. Reeves, who was much larger than Contreras, forced her to the floor and straddled her. For about eight minutes, while Contreras screamed and struggled, Reeves beat her, hit her with the concrete, wrenched her neck, and attempted to strangle her with his hands and a piece of wood. Finally, he retrieved a box cutter from another room and slit her throat. He turned off the lights and dragged her body into a back room. Meanwhile, people at another office who had heard Contreras scream called 911. Police arrested Reeves shortly after he drove away in Contreras's car. He had her cell phone in his pocket.

*State v. Reeves*, 310 P.3d 970, 972 (Ariz. 2013).

Reeves was convicted of first-degree murder and other counts. *Id.* After the jury could not reach a verdict on the appropriate sentence, the judge declared a mistrial with respect to the penalty phase. *Id.* Later, a second jury determined that Reeves should be sentenced to death for the murder. *Id.*

After unsuccessfully pursuing post-conviction relief in state court, Reeves filed a notice of intent to seek habeas corpus relief in this Court. (Doc. 1.) The Court appointed counsel (Docs. 5, 6) and Respondents filed the pending motions.

II.     Juror Contact

    A.     **The Parties' Arguments**

Respondents seek an order precluding Reeves's legal team from contacting Reeves's trial jurors absent leave of the Court based on a showing of good cause. (Doc. 12.) In a nutshell, Respondents argue that (1) the Supreme Court has generally recognized that trial jurors should be protected from inquiry about their deliberations, both because juror testimony is generally inadmissible to impeach a verdict and because a contrary approach would undermine jurors' incentive to engage in full and candid deliberations; (2) even if juror interviews might sometimes be appropriate to develop juror-misconduct claims, "many federal courts"—including this Court, via Local Rule 39.2(b)—"have required a threshold good-cause showing before interviews may occur"; and (3) limitations on juror interviews are particularly appropriate in the habeas context because a habeas petitioner "has no constitutional right to interview jurors." (*Id.* at 1-4.)

Reeves opposes the motion "for three reasons. First, any such requirement would unreasonably hinder habeas counsel's independent investigation and, ultimately, their ability to assert all meritorious claims. Second, there is no binding authority that mandates an absolute prohibition on post-verdict juror contact absent a party's ability to show good cause. And third, existing ethical constraints sufficiently safeguard jurors against harassment and intrusive inquiry." (Doc. 14 at 2-10.) As for the first point, Reeves elaborates that "[c]ounsel must be able to seek out issues of juror misconduct, (racial) bias, and tampering without establishing a predicate showing of good cause. Put differently, counsel cannot afford to sit back and hope for a Good Samaritan juror—ten years after Mr. Reeves' capital trial—to approach counsel with sufficient information to demonstrate good cause." (*Id.* at 5.) In further support of the second point, Reeves notes that the Arizona Supreme Court has repeatedly rejected proposed rule modifications designed to limit post-verdict juror contact. (*Id.* at 8.)

In reply, Respondents argue that Reeves's arguments about the need to develop evidence "ignore[] AEDPA's severe restrictions on new claims and evidence." (Doc. 15 at 1.) As for the unsuccessful rule amendments, Respondents argue that "these denials just as logically support Respondents' position by illustrating that current Arizona law adequately protects juror privacy and verdict integrity." (*Id.* at 4.)

B.   **Analysis**

"[V]ery substantial concerns support the protection of jury deliberations from intrusive inquiry." *Tanner v. United States*, 483 U.S. 107, 127 (1987). In *Tanner*, the Supreme Court acknowledged that "postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior" but held that "[i]is not at all clear . . . that the jury system could survive such efforts to perfect it," because allegations "raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process" and may undermine "full and frank discussion in the jury room, jurors' willingness to return an unpopular

verdict, and the community's trust in a system that relies on the decisions of laypeople." *Id.* at 120-21.

For these reasons, courts "have long imposed restrictions on lawyers seeking access to jurors." *Mitchell v. United States*, 958 F.3d 775, 787 (9th Cir. 2020). As the Ninth Circuit has recognized, "[r]ules restricting lawyers' access to jurors (1) encourage freedom of discussion in the jury room; (2) reduce the number of meritless post-trial motions; (3) increase the finality of verdicts; and (4) further Federal Rule of Evidence 606(b) by protecting jurors from harassment and the jury system from post-verdict scrutiny." *Id.* (citation and internal quotation marks omitted). Indeed, the Ninth Circuit has suggested that district courts have an affirmative duty to protect jurors from meritless post-verdict inquiries. *Id.* ("[I]t is incumbent upon the courts to protect jurors from the annoyance and harassment of such conduct.") (citation and internal quotation marks omitted). And in a related vein, the Ninth Circuit has held that "a district court does not abuse its discretion in refusing to allow postverdict interrogation of jurors" and that "a district court's denial of a motion to interrogate jurors does not raise a constitutional problem where there has been no specific claim of jury misconduct." *Id.* (cleaned up).[1]

In *Mitchell*, the defendant argued that these longstanding rules and doctrines limiting post-verdict juror access should be relaxed in light of the Supreme Court's decision

---

[1] Other circuits follow similar approaches. *See, e.g., United States v. Wright*, 506 F.3d 1293, 1303 (10th Cir. 2007) ("District courts have 'wide discretion' to restrict contact with jurors to protect jurors from 'fishing expeditions' by losing attorneys. This court has held that a trial judge is well within his discretion in denying leave to inquire of jurors where there was no claim of external interference with the process.") (citation omitted); *United States v. Kepreos*, 759 F.2d 961, 967 (1st Cir. 1985) ("[T]his Circuit prohibits the post-verdict interview of jurors by counsel, litigants or their agents except under the supervision of the district court, and then only in such extraordinary situations as are deemed appropriate. Permitting the unbridled interviewing of jurors could easily lead to their harassment, to the exploitation of their thought processes, and to diminished confidence in jury verdicts, as well as to unbalanced trial results depending unduly on the relative resources of the parties."); *United States v. Riley*, 544 F.2d 237, 242 (5th Cir. 1976) ("Historically, interrogations of jurors have not been favored by federal courts except where there is some showing of illegal or prejudicial intrusion into the jury process.").

- 4 -

in *Pena-Rodriguez v. Colorado*, 127 S.Ct. 855 (2017), which "held that, notwithstanding Rule 606(b), juror statements demonstrating racial animus could be admissible as evidence." *Mitchell*, 958 F.3d at 783. Specifically, the defendant argued that "although *Pena-Rodriguez*'s immediate effect was to make an exception to the rule precluding admissibility of evidence of racial bias in jury deliberations under Rule 606(b), . . . this exception would have no practical effect if defendants could not acquire evidence of juror bias" and that *Pena-Rodriguez* should thus be interpreted as requiring "an equally significant change to the precedents allowing district courts to deny lawyers leave to interrogate jurors and to rules such as [Arizona] Local Rule 39.2, which require lawyers to show good cause before they can interview jurors . . . , because they impose an unreasonable burden on a criminal defendant's ability to ensure that no racial bias impacted the jury's verdict." *Id.* at 790. The Ninth Circuit disagreed, holding that *Pena-Rodriguez* "left untouched the law governing investigating and interviewing jurors" and that "*Pena-Rodriguez* permits district courts to continue to exercise their discretion in granting motions to interview jurors . . . and to implement and adhere to rules such as [Arizona] Local Rule 39.2 requiring a showing of good cause." *Id.* The court also rejected the defendant's argument that such rules would effectively impair his ability (and the ability of other criminal defendants) to develop claims of juror misconduct, noting that "*Pena-Rodriguez* explained that the pattern of jurors approaching the lawyers in the case to report racial bias expressed during deliberation is common in cases involving juror allegations of racial bias." *Id.* at 792 (citations and internal quotation marks omitted).

With this backdrop in mind, the Court has relatively little difficulty concluding that Respondents' motion should be granted. Under longstanding Ninth Circuit law (as ratified in *Mitchell*), the Court possesses discretion to enter the type of order sought by Respondents, and although there is no rule or statute that affirmatively compels the issuance of such an order, doing so would be an appropriate exercise of the Court's discretion because the requested order would effectuate the goal—which "[i]t is incumbent on the courts" to effectuate, *Mitchell*, 958 F.3d at 787 (citation and internal quotation marks

omitted)—of protecting jurors from the annoyance and harassment of meritless post-verdict inquiries.

Reeves' arguments to the contrary lack merit. First, although Reeves argues that the requested order "would unreasonably hinder habeas counsel's independent investigation" because it would require him "to sit back and hope for a Good Samaritan juror . . . to approach counsel with sufficient information to demonstrate good cause" (Doc. 14 at 2, 5), the Ninth Circuit rejected a nearly identical argument in *Mitchell*, noting along the way that it is relatively common for jurors to approach lawyers after trial to raise claims of racial bias during deliberation. 958 F.3d at 792. The Court also finds it significant that the defendant in *Mitchell* raised his challenge by way of a Rule 60(b) motion, which the Ninth Circuit concluded was "not a disguised second or successive . . . habeas motion." *Id.* at 786. Reeves has not explained why his ability to gather new evidence in this habeas corpus action under 28 U.S.C. § 2254—in which review is generally "limited to the record that was before the state court that adjudicated the claim on the merits," because the "backward-looking language [of § 2254] requires an examination of the state-court decision at the time it was made" and "[i]t follows that the record under review is limited to the record in existence at that same time *i.e.,* the record before the state court," *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011)—should be more expansive than the evidence-gathering rights of a defendant seeking evidence as part of his original case.

Reeves's second argument—that "there is no binding authority that mandates an absolute prohibition on post-verdict juror contact absent a party's ability to show good cause" (Doc. 14 at 2)—is already addressed above. Although there may not be "binding authority" that "mandates" the issuance of the requested order, there is an ample body of case law, from the Ninth Circuit and elsewhere, confirming that district courts possess discretion to issue the sort of order being sought here and identifying powerful reasons why district courts should exercise their discretion in favor of such requests.

Finally, Reeves's third argument—that "existing ethical constraints sufficiently safeguard jurors against harassment and intrusive inquiry" (Doc. 14 at 2)—is unpersuasive

- 6 -

because it fails to recognize that post-trial juror inquiries are inherently intrusive and potentially harmful, even if performed in a courteous and professional manner.[2] If jurors know they can be tracked down years (or, as in this case, more than a decade) after their service concluded and asked questions about their service, such knowledge alone may inhibit "full and frank discussion in the jury room [and] jurors' willingness to return an unpopular verdict," *Tanner*, 483 U.S. at 120-21, and undermine "freedom of discussion in the jury room," *Mitchell*, 958 F.3d at 787.

Accordingly, Respondents' request is granted. *See also Martinez v. Shinn*, 2020 WL 3574594, *1-3 (D. Ariz. 2020) (granting similar motion in death penalty habeas action); *Cota v. Ryan*, 2017 WL 713640 (D. Ariz. 2017) (same).[3]

III. <u>Victim Contact</u>

A. **The Parties' Arguments**

Respondents ask the Court to preclude Reeves's legal team from directly contacting any statutory victim[4] in this case and to order that any such contact be initiated through counsel for Respondents. (Doc. 13.) Respondents contend this request is supported by various provisions of state and federal law, including Arizona's Victims' Bill of Rights ("VBR"), which provides that "[t]he defendant, the defendant's attorney or an agent of the defendant shall only initiate contact with the victim through the prosecutor's office," A.R.S. § 13-4433(B), and the federal Crime Victims' Rights Act ("CVRA"), which

---

[2] To be clear, the Court has no doubt that Reeves's able counsel would behave courteously, professionally, and in a dignified manner if allowed to perform juror interviews in this case.

[3] The Court recognizes that other judges have reached conflicting decisions when presented with similar requests for juror-contact restrictions in Arizona death penalty habeas proceedings. *See, e.g., Ellison v. Ryan*, 2017 WL 1491608 (D. Ariz. 2017); *Harrod v. Ryan*, 2016 WL 6082109 (D. Ariz. 2016).

[4] Under Arizona law, a victim is "a person against whom the criminal offense has been committed, including a minor, or if the person is killed or incapacitated, the person's spouse, parent, child, grandparent or sibling, any other person related to the person by consanguinity or affinity to the second degree or any other lawful representative of the person . . . ." A.R.S. § 13-4401(19).

- 7 -

includes a provision giving state crime victims in federal habeas proceedings "the right to be treated with fairness and respect for the victim's dignity and privacy," 18 U.S.C. § 3771(a)(8). (*Id.* at 1-5.) Alternatively, Respondents contend the Court possesses authority to issue the requested order pursuant to its "inherent authority to regulate" cases before it. (*Id.* at 5.) Finally, Respondents contend that Reeves would suffer no harm from the requested order because "he should raise in his habeas petition only claims that were properly exhausted in state court." (*Id.* at 5-6.)

In response (Doc. 14), Reeves argues that Respondents' motion should be denied for four reasons: (1) to the extent Respondents are relying on the CVRA, they lack standing because, under 18 U.S.C. § 3771(b)(2)(B)(i), "only two specific persons may enforce rights under the CVRA: 'the crime victim or the crime victim's lawful representative'" (*id.* at 10-12); (2) alternatively, Respondents' reliance on the CVRA fails on the merits because the statutory right to "dignity and privacy" is "neither coextensive nor synonymous with an unqualified right to be free of contact" and because Congress's failure to enumerate any specific right to be free from such contact in the CVRA is "strong evidence" that Congress did not intend to create such a right (*id.* at 14-15); (3) Respondents' reliance on the VBR and other provisions of state law is misplaced because any state-law rights pertaining to contact by defense counsel expire at the conclusion of state post-conviction relief ("PCR") proceedings, whereas certain other state-law rights expressly remain in effect during federal habeas proceedings (*id.* at 13-14); and (4) Respondents' request is "unripe" because it is premised "on the false assumption that all contact with Mr. Reeves's defense team is unwelcome, hostile, or invasive, and that the defense team will not treat victims fairly and with dignity absent this Court's intervention" (*id.* at 15-16). Finally, in a footnote, Reeves suggests the requested order "would amount to an unconstitutional prior restraint on the First Amendment rights of Mr. Reeves' counsel." (*Id.* at 11 n.2.)

In reply, Respondents argue that Reeves's CVRA-related standing arguments miss the mark because 18 U.S.C. § 3771(d)(1) permits "the attorney for the Government" to assert a victim's rights during a habeas proceeding. (Doc. 15 at 4-5.) As for the

applicability of the VBR and other state-law provisions, Respondents assert in conclusory fashion that those provisions "do not become irrelevant on the conclusion of the state-court proceedings" and that a contrary ruling "would frustrate the very interests of comity of [AEDPA]." (*Id.* at 5.)  As for the applicability of the CVRA, Respondents clarify that their position is that "adopting Arizona's procedure" in this case would "further[] the CVRA's protection of victims' rights to privacy and dignity." (*Id.* at 5-6.)  As for the issue of ripeness, Respondents argue that "it is Reeves's concerns, rather than Respondents' motion, that are premature" because "Reeves has made no requests for victim interviews, and it is possible that if such a request is made, the victims will agree to an interview." (*Id.* at 6-7.)  Finally, Respondents contend that the proposed order would not violate the First Amendment rights of Reeves's counsel.  (*Id.* at 7-8.)

  B.  **Analysis**

    Respondents' request for an order precluding direct contact with victims presents a close call.  Reeves makes a strong argument that the state-law provisions cited by Respondents become inapplicable at the conclusion of state-court PCR proceedings and Respondents fail to offer a meaningful response to Reeves's textual arguments on this point.

    That leaves the CVRA, which protects each crime victim's "right to be treated with fairness and with respect for the victim's dignity and privacy" and specifically states that "[i]n a Federal habeas corpus proceeding arising out of a State conviction, the court shall ensure that a crime victim is afforded [this] right[]." 18 U.S.C. §§ 3771(a)(8), (b)(2)(A). Many judges of this Court have concluded that, even assuming the state-law provisions cited by Respondents aren't directly applicable here and even though § 3771(a)(8) doesn't specifically address the permissibility of direct contact by defense counsel, it still makes sense to require defense counsel in a habeas proceeding to route any victim interview request through the government's counsel (just as would be required under Arizona law during state-court proceedings) because this approach furthers § 3771(a)(8)'s goal of

protecting the dignity and privacy of crime victims. *See generally Johnson v. Ryan*, 2018 WL 6573228, *1-4 (D. Ariz. 2018) (discussing past cases).[5]

The Court agrees. As an initial matter, the concept of standing does not serve as an obstacle to the issuance of the requested order. Reeves's standing-related arguments focus on § 3771(b)(2)(B)(i), which provides that the rights of victims in federal habeas corpus proceedings "may be enforced by the crime victim or the crime victim's representative," but Reeves overlooks § 3771(b)(2)(A), which states that "*the court shall ensure* that a crime victim is afforded" certain rights, including the right to be treated with dignity and privacy. *Id.* (emphasis added). This provision "makes clear that once a court proceeding has commenced, the district court has an ongoing duty to ensure that crime victims are accorded their rights, independent of whether a victim has filed a motion to enforce those rights." *In re Wild*, 994 F.3d 1244, 1308 n.25 (11th Cir. 2021) (*en banc*) (Branch, J., dissenting), *cert. petition pending*. The Court takes this duty seriously. Thus, assuming that crime victims' right to privacy and dignity includes the right to be free from direct contact by defense counsel during a habeas proceeding—the merits of that issue are discussed below—the Court is unwilling to adopt an approach that would effectively require crime victims to forfeit this right unless they affirmatively file a motion for relief. Such an approach would undermine, rather than promote, the CVRA's goals and purpose. *Cf. Kenna v. U.S. Dist. Ct. for C.D. Cal.*, 435 F.3d 1011, 1016 (9th Cir. 2006) ("Our interpretation advances the purposes of the CVRA . . . [which include] ensur[ing] that the district court doesn't discount the impact of the crime on the victims . . . [and] allow[ing] the victim to regain a sense of dignity and respect rather than feeling powerless and ashamed") (citations and internal quotation marks omitted).

On the merits, Reeves makes much of the fact that the CVRA doesn't specifically address the concept of direct contact by defense counsel. (Doc. 14 at 14-15.) He characterizes the absence of any specific "edict" on this topic as "strong evidence that

---

[5] Admittedly, not all judges of this Court have reached this conclusion. *See, e.g., Miller v. Shinn*, 2021 WL 4503461 (D. Ariz. 2021); *Forde v. Shinn*, 2021 WL 2555430 (D. Ariz. 2021); *Burns v. Shinn*, 2021 WL 5280601 (D. Ariz. 2021).

Congress did not intend" to create any rights on this topic and contends that, if the Court were to rule otherwise, it would be "judicially engraft[ing] new rights onto the statute." (*Id.*, citation omitted.) This argument is unavailing. Although Reeves is of course correct that courts "must presume that Congress says in a statute what it means and means in a statute what it says there," because "[a]textual judicial supplementation" violates the "fundamental principle of statutory interpretation that absent provisions cannot be supplied by the courts," *Rotkiske v. Klemm*, 140 S.Ct. 355, 360-61 (2019) (cleaned up), the problem with Reeves's approach is that it would effectively read § 3771(a)(8) out of the CVRA and render it a nullity. That approach is misplaced because § 3771(a)(8) specifically confers upon victims the right to be "treated with fairness and with respect for the victim's dignity and privacy." Although concepts such as "fairness," "dignity," and "privacy" are admittedly difficult to define with precision, they must mean *something*. *See generally Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249 (1985) (applying "the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative") (citation omitted); *Beisler v. C.I.R.*, 814 F.2d 1304, 1307 (9th Cir. 1987) (en banc) ("We should avoid an interpretation of a statute that renders any part of it superfluous and does not give effect to all of the words used by Congress."). And in the Court's view, at least in the unique context of a federal habeas corpus proceeding arising from an Arizona state-court death penalty conviction, these statutory rights are best safeguarded and effectuated by adopting the same procedural protections related to direct contact by defense counsel that were applicable during the underlying state-court proceedings. It would be anomalous if the rule were otherwise—that is, if the right of a crime victim to be free from potentially intrusive dignity and privacy violations (such as when a defense investigator unexpectedly shows up at a victim's door, years or decades after the victim's loss of a loved one, and asks questions about this traumatic loss), which remains intact throughout the defendant's trial, direct appeal, and PCR proceeding, somehow evaporates as soon as the case reaches the federal habeas corpus stage, even though review during that stage (unlike during some of the earlier stages) is generally

"limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181-82.

The foregoing analysis also addresses Reeves's ripeness-related challenge. At least in the unique context of Arizona death penalty habeas cases, it would be inconsistent with § 3771(a)(8)'s objective of safeguarding victims' right to fairness, dignity, and privacy to condition the issuance of the type of order sought here on an affirmative request by a victim or an affirmative complaint by a victim.

Finally, the Court rejects Reeves's argument that an order granting the relief sought by Respondents would amount to an unconstitutional prior restraint on habeas counsel's First Amendment rights. As this Court previously noted, "attorneys are properly subject to an array of different restrictions and regulations that can have the effect of limiting their ability to obtain information—even potentially exculpatory information—from prospective witnesses." *Johnson,* 2018 WL 6573228 at *6 (citing Ariz. R. Prof. Conduct, ER 4.1(a), Ariz. R. Prof. Conduct, ER 4.2, and LRCiv 39.2(b)).

Accordingly, **IT IS ORDERED** that:

1. Respondents' motion to preclude juror contact (Doc. 12) is **granted**. Reeves may not contact any jurors other than by leave of Court upon a showing that extraneous prejudicial information or outside influence was improperly brought to the jury's attention.

2. Respondents' motion to preclude direct victim contact (Doc. 13 ) is **granted**. No person who is defined as a victim in this matter pursuant to Arizona law shall be contacted by anyone working with or on behalf of Reeves or Reeves's counsel unless the victim, through counsel for Respondents, has consented to such contact. If consent is not provided and Reeves nonetheless believes the contact is necessary, he may file a motion with the Court explaining the necessity for such contact.

Dated this 6th day of December, 2021.

Dominic W. Lanza
United States District Judge